IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WILLIAM L. WRIGHT, III,
      Petitioner,

      v.                                    CIVIL ACTION NO. 3:07-cv-251

JEFFREY BEARD, Secretary,
Pennsylvania Department of Corrections,
et al.,
      Respondents.

## MEMORANDUM AND ORDER

Petitioner William L. Wright, III, is a state prisoner who was convicted of first degree murder and sentenced to death in the Court of Common Pleas of Blair County in April 2000. His direct appeal is currently pending before the Pennsylvania Supreme Court at Commonwealth v. Wright, Capital Appeal Docket No. 403 (Pa.). Wright has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in which he claims that the Pennsylvania Supreme Court has violated his right to due process because it has not yet issued a decision on his direct appeal. Presently pending before this Court is Respondents' *Motion to Dismiss* (Doc. No. 21), to which Wright has filed a *Reply* (Doc. No. 22). For the reasons set forth below, the Court shall deny the motion to dismiss and instead stay this proceeding. The Court shall also direct counsel for Respondents to file a monthly update on the status of Petitioner's direct appeal.

I.

On April 17, 2000, a jury convicted Wright of first degree murder in the killing of James Mowery. It also convicted him of aggravated assault, burglary, simple assault, two counts of recklessly endangering another person, and criminal trespass. Following a separate penalty hearing, the jury sentenced Wright to death. Thereafter, the trial court appointed Wright new

counsel, R. Thomas Forr, Jr., Esquire. Forr filed a post-sentence motion. In May of 2001, the trial court presided over a four-day evidentiary hearing. On October 28, 2002, the trial court issued a 75-page Opinion and Order denying Wright's post-trial motion.[1]

On February 13, 2003, Wright, through Forr, filed a direct appeal with the Pennsylvania Supreme Court. See Commonwealth v. Wright, Capital Appeal Docket 403 (Pa.). (The docket sheet for Wright's direct appeal is available for review on Pennsylvania's Unified Judicial System's website at http://ujsportal.pacourts.us/DocketSheets/Appellate.aspx, and the Court takes judicial notice of it). The record in Wright's case, which includes 28 volumes of testimony, was transmitted to the Pennsylvania Supreme Court on May 19, 2003. Forr and Mary Ann Probst, Esquire, submitted a brief on Wright's behalf[2] on August 29, 2003, raising the following fifty-nine claims:

I.    Was Appellant's right to due process violated:

    A.    in that Attorney Passarello was appointed 12 days before commencement of jury selection, and as a result, had virtually no time to prepare for trial?

    B.    in that Attorney Kling was appointed 5 days prior to the selection of the death penalty jury and did not have time to prepare for a sentencing hearing?

    C.    in that the Court denied legitimate requests by Attorney Passarello and Attorney Kling for a continuance based on their assertion to the Court that they did not have adequate time to prepare for trial?

    D.    in that newly appointed counsel had little time to provide forensic experts,

---

[1] The trial court's Opinion and Order, as well as the briefs filed in the appeal before the Pennsylvania Supreme Court, are available to the public in the file maintained by the Prothonotary of the Pennsylvania Supreme Court in Commonwealth v. Wright, Capital Appeal Docket No. 403 (Pa.) and the Court takes judicial notice of those public records.

[2] Wright claims that on August 12, 2003, he submitted a petition to the Pennsylvania Supreme Court seeking to terminate Forr as his counsel and to proceed *pro se*. The Pennsylvania Supreme Court did not grant that request.

ballistic experts, a mitigation expert and an investigator with sufficient information in a timely manner to afford the Appellant the effective assistance of expert testimony?

E. in that the trial date was abruptly moved forward from June to April, 2000 resulting in the investigators not being able to complete portions of their investigation prior to the commencement of the trial?

F. in the manner in which the Court rushed the jury selection, forcing counsel to exclude potentially favorable jurors without an effort at rehabilitation?

G. by the fact he was incarcerated between November 26, 1998 through December 2, 1998 prior to his preliminary hearing without having the opportunity to speak with counsel?

H. by only having a limited time to converse with then Assistant Public Defender, John Siford prior to his preliminary hearing?

I. by being denied an opportunity to meet with counsel between the date of December 2, 1998 and December 21, 1998 when he was sent to Camp Hill, SCI for a mental health evaluation without receiving prior notice or having discussed this matter with his attorney?

J. when appointed counsel, Thomas Hooper, filed pre-trial motions, without the consent of the Defendant and without properly discussing the same with him?

K. when on two or three different occasions he requested that the Court appoint new counsel for him as a result of counsel's refusal to communicate with Appellant?

II. Did the Court err as a matter of law:

A. in denying defense counsel's request for a mistrial based on Attorney Consiglio's statements during closing argument regarding the Appellant's constitutional right to remain silent?

B. by not granting an adequate and timely curative instruction with respect to Attorney Consiglio's reference to Appellant's failure to testify?

C. by providing the jury a questionnaire that was not in conformity with Pennsylvania Rules of Criminal Procedure 1107?

D. when it permitted a religious test concerning a juror's sincere Catholic beliefs to be used in determining whether prospective jurors would serve on the jury?

E. by instructing counsel for the Appellant and the Commonwealth to rearrange the order of their jury selection questioning such that it resulted in a religious test being applied to the jurors or rushed the selection process so that there was no attempt at rehabilitation?

F. in permitting evidence concerning ballistic and DNA evidence to be presented by the Commonwealth even though the defense was not provided with said evidence until after jury selection and immediately prior to the commencement of trial?

G. in failing to provide the defense with a full and complete trial transcript in that during the individual voir dire, the Court made numerous references to off the record discussions with members of the jury panel for which neither the Appellant nor his counsel were present?

    a. when the Court denied trial counsel's request fo instantaneous transcripts of both Dr. Cottle's and Tammy Mowery's trial testimony so that the same could be reviewed by the defense's expert, Dr. Williams?

H. in denying Attorneys Passarello and Kling's requests for continuances?

I. in permitting evidence of the blood taken at Altoona Hospital on November 26, 1998 to be introduced into evidence in that the same was not given with a knowing, intelligent consent of the Appellant nor was the same given pursuant to the procurement of a warrant?

J. in allowing the District Attorney's Office of Blair County to proceed as counsel in this case despite the conflict of interest that was presented at the pre-trial hearings regarding Cathy Miller, a member of the District Attorney's Office?

K. in allowing the testimony of Tammy Boston and Jeanne Barr regarding custody and the Appellant's character as it was irrelevant, prejudicial and highly inflammatory?

L. by allowing the admission into evidence of inflammatory pictures showing the body of James Mowery, specifically photos 33, 34 and 36?

M. in permitting into evidence the inflammatory and misleading 911 tapes?

N. in not properly sequestering the jury in that they were permitted to visit museums, ball games and other outings together when the oath sworn to the jury attendants permitted them very limited contact with the members of the jury?

O. in stressing to the jury that the Judge wanted them to bond as opposed to stressing the requirement for independent review of the evidence?

P. for permitting the Mowery family to wear buttons during the course of the trial and also for designating locations where family members were sitting in the gallery?

Q. in wrongfully instructing the jury that "it could be any of the crimes that occurred inside," during the Court's charge concerning the burglary offense?

R. in failing to grant the demurrer requested by Attorney Kling with respect to the grave risk of danger aggravating circumstance during the penalty phase.

S. in failing to give a Simmons instruction that life in prison means life without parole when the same was requested by counsel for the defense?

T. in failing to instruct as a matter of law that the Appellant did not have a significant history of a prior criminal record?

U. in failing to permit Dr. Sangiorgio's records into evidence when the District Attorney would not stipulate to the same and Dr. Sangiorgio could not appear at the sentencing?

III. Was counsel ineffective:

A. when they failed to object initially to Consiglio's closing remarks regarding the Appellant's failure to testify during the trial?

B. for failing to have ballistic and DNA testing performed on the evidence by independent experts to counter the conclusions of Commonwealth experts and in failing to request a continuance upon the receipt of such evidence after jury selection?

C. for failing to object to Consiglio wrongfully stating in his closing argument that there was blood inside the gun which statement was not based on the evidence?

D. by Attorney Passarello and Attorney Kling in that they were appointed too late to properly represent the Appellant and did not renew their request for continuance during a jury selection or upon receipt of discovery after jury selection?

E. for failing to object in a timely fashion to the questions of the District Attorney during jury selection with respect to the consumption of alcohol and its possible effects of reducing murder in the first degree to murder in the third degree?

F. for failing to object in a timely fashion to the questions of the District Attorney during jury selection concerning the relationship between the Appellant and Mrs. Mowery?

G. for failing to object to questions by the District Attorney during jury selections which dealt solely with prospective jurors' inability not to express any sympathy toward the Appellant?

H. for failing to exercise all their peremptory challenges thereby possibly incurring the waiver of any of the issues dealing with jury selection even though the same were evidence from the record?

I. for failing to object to the Court's modification of the standard jury questionnaire to include a question about the religious faith of the jurors?

J. for failing to object to criminal trespass being considered as a lawful or appropriate felony for the aggravating circumstances of committing a murder during the course of a felony?

K. for failure to object to and/or not renewing a request for a continuance concerning the ballistic/blood evidence to be presented by the Commonwealth even though the defense was not provided with said evidence until after jury selection and immediately prior to the commencement of trial?

L. for failing to object to Consiglio's opening statement whereby he indicated that the Commonwealth could call numerous other witnesses to support its case which they did not intend to call, thereby improperly bolstering the Commonwealth's case?

M. for failing to object to Consiglio's reference in his opening statement to previous bad acts for which the Appellant has never been charged nor convicted, including the killing of a rabbit, flattening of tires and other allegations?

N. for failing to adequately discuss the case with the Appellant prior to the preliminary hearing?

O. during the cross examination of Dr. Cottle at the preliminary hearing?

P. for refusing to actively communicate with the Appellant or permit him to aid in the preparation of his defense for approximately six months between May and November 1999?

Q. for promising to obtain the opinions of experts and failing to provide the same, and not providing the Appellant an opportunity to have interviews with the experts?

R. for failing to request a jury instruction regarding the voluntariness of the Appellant's statement which the jury is permitted to consider in any trial prior to

                making other determinations with respect to guilt or innocence?

S.       for failing to introduce the Appellant's taped conversation with Office Koehle in which the Appellant discussed the complaints lodged against him by Mr. Mowery?

T.       for failing to call witnesses who were available to testify concerning the abuse Mrs. Mowery received at the hands of the decedent, Mr. Mowery, as a rebuttal to Mrs. Mowery's testimony?

U.       in failing to call an expert to refute the aggravating circumstances that the shots in the dry wall in the closet posed a grave risk of danger to the other people in the room?

V.       for failing to object to the Court's failure to define to the jury what grave risk of death meant?

W.      for failing to object to a request that the Court instruct as a matter of law that Appellant did not have a significant history of a prior criminal record?

X.       for advising the Appellant not to testify at this trial based on their promises they would have experts to testify on his behalf, thus denying the Appellant his constitutional right to testify in his own defense?

Y.       in failing to attempt to rehabilitate certain jurors who initially voiced opposition to the death penalty?

Z.       in failing to object to the Mowery family wearing buttons during the course of the trial and also for allowing labels to designate where family members were sitting in the gallery?

AA.    in failing to subpoena Dr. Sangiorgio or his business recordskeeper to testify to the information contained in the Appellant's medical records?

*Brief For Appellant* in <u>Commonwealth v. Wright</u>, Capital Appeal Docket No. 403 (Pa.).

On October 14, 2003, the Commonwealth of Pennsylvania filed its *Appellee Brief*. On March 3, 2004, the Supreme Court of Pennsylvania conducted oral argument on Wright's appeal.[3]

---

[3] On March 3, 2004, the following justices were on the Pennsylvania Supreme Court: then Chief Justice Ralph J. Cappy; current Chief Justice Ronald D. Castille; Justice Russell M. Nigro; Justice Sandra Schultz Newman; Justice Thomas G. Saylor; Justice J. Michael Eakin; and,

The Pennsylvania Supreme Court has not yet issued its decision. No activity has been recorded on the public docket on Wright's direct appeal since the March 3, 2004 oral argument.[4]

In October 2007, Wright commenced this federal habeas proceeding by filing a pro se *Petition* (Doc. No. 1) and a *Memorandum of Law* in support (Doc. No. 2).[5] He contends that the Pennsylvania Supreme Court's alleged inordinate delay in issuing a decision on his direct appeal has violated his right to due process. As relief, he requests that this Court order the Pennsylvania Supreme Court to issue a decision on his direct appeal. In the alternative, Wright requests that this Court order the Commonwealth of Pennsylvania to immediately retry him, and that if it does not, that the Warden of SCI Greene be ordered to release him.

II.

This Court has no authority over the Pennsylvania Supreme Court and cannot order it to issue a legal decision on a case before it. As a federal district court sitting in habeas, this Court has jurisdiction to grant Wright the alternative relief that he seeks – an order directing the Warden of SCI Greene to release him unless the Commonwealth retries him – if Wright shows

---

Justice Max Baer. Since oral argument was conducted in this case, three justices have left the Pennsylvania Supreme Court. Chief Justice Cappy retired in January 2008, and Justice Schultz Newman retired in or around December 2006. Justice Nigro was denied retention in May 2006.

[4] At Appendix B to his *Memorandum of Law* in support of his habeas petition (Doc. No. 2), Wright has attached a copy of a letter dated September 4, 2006, which he claims that he sent to then Chief Justice Cappy and in which he inquired about when a ruling would be issued on his direct appeal.

[5] This Court appointed Federal Public Defender Lisa B. Freeland, Esquire, to represent Wright. (Doc. No. 3). Ms. Freeland subsequently filed a *Motion for Pro Se Representation* (Doc. No. 13), in which she explained Wright's desire to represent himself and in which she requested that she and Trisha A. Russell, Esquire, be appointed as stand-by counsel. This Court granted Ms. Freeland's motion. (Doc. No. 17).

that he is in custody in violation of his federal constitutional rights. 28 U.S.C. § 2254(a).

Wright contends that he is entitled to habeas relief because the alleged inordinate delay by the Pennsylvania Supreme Court in deciding his direct appeal has resulted in a violation of his due process rights. This case, however, is not at the stage where an alleged delay has amounted to a meritorious due process claim *per se*. To prevail on such a claim in federal habeas corpus, a state prisoner must show that he has been prejudiced by an unreasonable delay in a state proceedings, Burkett v. Cunningham, 826 F.2d 1208, 1221-27 (3d Cir. 1987); Burkett v. Fulcomer, 951 F.2d 1431, 1445-46 (3d Cir. 1991); Simmons v. Beyer, 44 F.3d 1160, 1169-71 (3d Cir. 1995), and the Court finds that Wright has not demonstrated prejudice. Rather, at this time, Wright's inordinate delay claim is relevant to the consideration of whether he should be excused from the exhaustion requirement and be permitted to proceed with a federal habeas corpus petition in which he litigates whether his April 2000 convictions and sentence of death were obtained in violation of his federal constitutional rights.

The federal habeas statute requires a state prisoner to "exhaust" available state court remedies before seeking federal relief. 28 U.S.C. § 2254(b). In a capital case in Pennsylvania, the exhaustion rule requires a petitioner to first present his federal constitutional claims to the Pennsylvania Supreme Court before filing a petition for writ of habeas corpus with a federal district court. O'Sullivan v. Boerckel, 526 U.S. 838 (1999); Lambert v. Blackwell, 387 F.3d 210, 233-34 (3d Cir. 2004). Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation[,]" Duncan v. Walker, 533 U.S. 167, 179 (2001), the exhaustion requirement is intended to allow state courts the first opportunity to pass upon

federal constitutional claims, in furtherance of the policies of comity and federalism. See, e.g., Rose v. Lundy, 455 U.S. 509, 518-519 (1982) ("A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error"); O'Sullivan, 526 U.S. at 844 ("Comity thus dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief"). However, because "exhaustion is not jurisdictional, but a matter of comity," Story v. Kindt, 26 F.3d 402, 405 (3d Cir. 1994), a district court may dispense with the exhaustion requirement when "circumstances exist that render [the state] process ineffective to protect the rights of the applicant," 28 U.S.C. § 2254(b)(1)(B)(ii). One of these circumstances is inordinate delay in the state court. See, e.g., Lee v. Stickman, 357 F.3d 338, 341 (3d Cir. 2004) (eight year delay of PCRA petition with no resolution was inordinate delay); Coss v. Lackawanna Co. Dist. Att'y, 204 F.3d 453, 460 (3d Cir. 2000) (seven year delay), rev'd on other grounds, 532 U.S. 394 (2001); Story, 26 F.3d at 406 (nine year delay); Burkett, 826 F.2d at 1218 (five year delay in sentencing); Wojtczak v. Fulcomer, 800 F.2d 353, 354 (3d Cir.1986) (thirty-three month delay).

Wright's complaint about the time that it is taking the Pennsylvania Supreme Court to decide his case is not without some merit. To date, over fifty-six months have expired since the Pennsylvania Supreme Court conducted oral argument and it has yet to issued a decision. Other factors, however, counsel against the Court finding inordinate delay and excusing the exhaustion requirement. There is no evidence here that Wright's direct appeal proceeding has been stalled for an inexcusable reason or that it has inadvertently "fallen through the cracks" of

the Pennsylvania Supreme Court's system. It is listed as "active" on the capital appeal docket sheet and, since it as been argued and opened for more than 150 days, it must be listed in a monthly table provided by the Prothonotary to the Pennsylvania Supreme Court. <u>Internal Operating Procedures of Pennsylvania Supreme Court</u>, IV.A.4. Thus, this Court assumes that the Pennsylvania Supreme Court is working on its decision and that it will issue it in due course. For reasons that are not and should not be known to the public, the parties, or this Court, the Pennsylvania Supreme Court has not yet reached a point where it is prepared to issue a decision on Wright's direct appeal.

Thus, although fifty-six months is a substantial amount of time to rule on a direct appeal, this Court is not prepared at this time to hold that the Pennsylvania Supreme Court has taken too long to decide Wright's case and that Wright should be excused from the exhaustion requirement. The Court will not grant Respondents' motion to dismiss this case, however. Instead, the Court will deny the motion, stay this proceeding, and direct Respondents' counsel, Blair County District Attorney Richard A. Consiglio, Esquire, to file with the Court a monthly update on the status of Wright's direct appeal. This approach was followed by the district court in <u>Carter v. Vaughn</u>, 62 F.3d 591 (3d Cir. 1995). In that case, the district court did not act on the petition for habeas corpus relief but retained jurisdiction and thereafter began monitoring the state court proceedings. During that time, the district court issued several orders requiring the District Attorney's Office of Allegheny County to periodically update it on the status of the state court proceedings. The Court of Appeals found that this type of federal court oversight protected both the rights of the petitioner as well as the important consideration of comity by effectively prodding the state court to address the petitioner's claims in a timely fashion while

at the same time giving the state court the first opportunity to address the petitioner's claims. \

The Court shall copy the Pennsylvania Supreme Court on this Memorandum and Order to respectfully provide it with notice that this Court is constrained to monitor Wright's direct appeal proceeding and that there will be a point when, if no decision is issued by it, this Court will *sua sponte* lift the stay in this proceeding and excuse Wright of the exhaustion requirement.

AND NOW, this 1st day of December, 2008, it is hereby ORDERED and DIRECTED that:

(1) Respondents' *Motion to Dismiss* (Doc. No. 21) is DENIED and this proceeding is STAYED; and,

(2) On or before the twenty-eighth day of every month, beginning with December of 2008, counsel of record for the Respondents, Blair County District Attorney Richard A. Consiglio, Esquire, shall file with this Court written notice advising of the status of Wright's direct appeal proceeding.

                                                                s/ David Stewart Cercone
                                                                David Stewart Cercone
                                                                United States District Judge

Notice by ECF to Richard A. Consiglio, Lisa B. Freeland, and Tricia A. Russell and by U.S. Mail to:

William L Wright, III
DV-2181
SCI Greene
175 Progress Drive
Waynesburg, PA 15370

Office of the Prothonotary
Supreme Court of Pennsylvania
Re: Commonwealth v. Wright, Capital Appeal Docket No. 403
468 City Hall
Philadelphia, PA 19107